**EXHIBIT**

1

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 04-50492 |
| | : | |
| Daniel S. Summers | : | Chapter 7 |
| Jeannette E. Summers | : | |
| | : | Judge Hoffman |
| Debtor. | : | |

| | | |
|---|---|---|
| WILLKIE FARR & GALLAGHER LLP | : | |
| | : | Adv. Pro. Number 04-02244 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL S. SUMMERS | : | |

## AFFIDAVIT OF STEVEN SEIDMAN
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK )
                   ) SS:
COUNTY OF NEW YORK )

I, Steven Seidman, being first duly sworn, state as follows:

1. I am a member of Plaintiff Willkie Farr & Gallagher LLP ("WF&G"), plaintiff in the above action. I am competent to testify, and I have personal knowledge of the matters contained herein.

2. I provide this Affidavit in support of Plaintiff's motion for summary judgment filed herewith.

3. In addition, in the scope of my membership in WF&G, I have access to the regularly kept and maintained books and records of WF&G, and have reviewed and am familiar with WF&G's records regarding the facts set forth herein.

4. WF&G is now and at all times motioned herein, limited liability partnership duly organized and existing under and by virtue of the laws of the State of Delaware.

5. In or around March of 2003, Defendant Daniel S. Summers ("Defendant") engaged WF&G to provide legal services on behalf of Defendant's interests individually in connection with a proposed deal with the Elder-Beerman Stores Corporation.

6. On or about March 13, 2003, I, on behalf of WF&G, confirmed in writing the terms of WF&G's engagement by letter dated March 13, 2003. A true and accurate copy of such letter is attached hereto as Exhibit A.

7. In connection with this engagement, and as a condition to WF&G's representation of Defendant, WF&G required that Defendant provide some assurance of his financial condition and ability to pay for the legal services provided.

8. In response, Defendant delivered to WF&G documents and correspondences that showed Defendant or insiders to Defendant having a net worth of $138,774,218.00.

9. Specifically, on or about April 11, 2003, Defendant emailed to me a statement prepared by Defendant describing specific investments owned or held by Defendant and Jeannette E. Summers showing a total net worth in the amount of $138,774,218.00, broken down into trust assets, real estate assets, other assets, and liabilities. A true and accurate copy of such email is attached hereto as Exhibit B.

10. On or about April 14, 2003, Defendant forwarded to me through James McLaren ("Mr. McLaren") a separate email originally drafted by Patrick Jensen ("Mr. Jensen") of Duff & Phelps, LLC, which stated that a letter attached thereto summarized the estimated net worth of Defendant, a Duff & Phelps, LLC client (the "Duff & Phelps letter"). A true and accurate copy of such email is attached hereto as Exhibit C.

11. The Duff & Phelps letter attached to Mr. Jensen's original email stated that Defendant's estimated net worth as of August 26, 2002 totaled $138,774,218.00, and was signed by Mr. Jensen, a Managing Director of Duff & Phelps, LLC, and two other representatives of Duff & Phelps, LLC. A true and accurate copy of such letter is attached hereto as Exhibit D.

12. These electronic correspondences containing written statements of the financial condition of Defendant or insiders to Defendant were sent by Defendant to WF&G in response to WF&G's request for verification of Defendant's ability to pay for legal services rendered or to be rendered by WF&G.

13. WF&G relied on these written statements of Defendant's financial condition in agreeing to provide legal services to Defendant.

14. Notwithstanding Defendant's representation of ability to pay, Defendant has refused to tender payment for the services provided.

15. As a result, Defendant currently owes WF&G not less than $353,411.90 as of the petition date, plus interest and costs for legal services provided in reliance on Defendant's representations of his net worth and ability to pay.


_y/hr/o.r_
Date

_Steven Seidman_
Steven Seidman

Sworn to before me and subscribed in my presence this ___28___ day of April, 2005.

EILISH M. CAHALAN
Notary Public, State of New York
No. 02CA6088082
Qualified in New York County
Commission Expires March 3, 2007

Notary Public

# WILLKIE FARR & GALLAGHER

STEVEN A. SEIDMAN
212 728 8763
sseidman@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

March 13, 2003

Mr. Daniel S. Summers
Elder-Beerman Acquisition Ltd.
1044 Township Road 286
Richmond, Ohio 43944

Re:     Elder-Beerman Stores Corporation

Dear Mr. Summers:

This will confirm that we are pleased to represent you in connection with Elder-Beerman Stores Corporation.

Pursuant to some recently-adopted regulations of New York State, I am obliged to recite in this letter that we follow the convention of charging for services based on hourly rates (subject to revision on an annual basis on October 1) which, at present, range from $495 to $735 for partners, $225 to $490 for associates, and $90 to $205 for legal assistants and others. We also follow the convention of including with our bill a statement for disbursements, costs, and other charges incurred which normally include such things as duplicating, long distance telephone, computerized legal research, travel, and the like. You are entitled, in the event of a fee dispute involving amounts from $1,000 to $50,000, to seek arbitration in accordance with Part 137 of the Rules of the Chief Administrator of the New York courts. Finally, we do not construe this engagement as creating an attorney-client relationship with any persons or entities other than you.

I look forward to working with you.

Very truly yours,

Steven A. Seidman

SAS/vsb

1179986.1



EXHIBIT

A

*Funds*

| | |
|---|---|
| **From:** | Seidman, Steven |
| **Sent:** | Friday, April 11, 2003 11:28 AM |
| **To:** | Browne, Vere |
| **Subject:** | FW: financial statement |

-----Original Message-----
From: Dan Summers [mailto:dansummers@1st.net]
Sent: Friday, April 11, 2003 11:26 AM
To: Seidman, Steven
Subject: Fw: financial statement

Strictly FYI only.

I'm very sensitive about the liquidity of my statement. Too liquid.

> There are 6 entities in which we keep/monitor our finances:
>
> 1.   Summers Family Limited Partnership:   $17,000,000. (Monterey OCM Gold
> Fund, Stein Roe Balanced Fund)
>
> 2.   Daniel S. Summers Trust:   $17,000,000.  (CD's, National City Bank,
> Wesbanco Trust Dept., Lexington Funds)
>
> 3.   Jeannette E. Summers Trust:   $17,000,000.  (CD's, National City
> Bank, Wesbanco Trust Dept.  US Global Investors WrldPrecMiner Fund)
>
> 4.   Matthew A. Summers Revocable Trust:   $5,000,000. (CD's, National
> City Bank, Wesbanco Trust Dept., Salomon Smith Barney Balanced Fund)
>
> 5.   Katherine A. Summers Revocable Trust:   $5,000,000. (CD's, National
> City Bank, Wesbanco Trust Dept., Stein Roe Liberty Young Investor Z Fund)
>
> 6.   Summers Family Foundation:   $2,500,000.  (Vanguard Wellesley Income
> Fund)
>
> My wife and I are the General Partners for the Family Limited Partnership.
>
> Real Estate assets are net of mortgages:
>
> 1.   105-107 Market Street Associates:   $670,070.
>

EXHIBIT

B

tabbies®

> 2.  115 East McMurray:   $490,200.
>
> 3.  Cates Corner Associates:   $1,870,200
>
> 4.  Cippe Associates:   $250,000.
>
> 5.  100 Kohl Road Associates:   $3,200,000.
>
> 6.  Tennessee Associates:   $12,400,000.
>
> 7.  University Plaza of TN Associates:   $1,900,000.
>
> 8.  Wilson Square Associates:   $3,190,000.
>
> 9.  Greatwoods Market Place:   $14,500,000.
>
> 10.  Desoto Junction Associates:   $3,570,000.
>
> 11.  Athens West Associates:   $6,450,000.
>
> 12.  Clark Building Associates:   $1,160,000.
>
> 13.  Kateland Farms:   $1,850,000
>
> 14.  Bates Farm:   $1,000,000.
>
> OTHER ASSETS
>
> 1.  Furniture, Fixture & Equipment:   $5,500,000.
>
> 2.  Livestock:   $850,000.
>
> 3.  Receivables:
>          MRG:        $ 3,025,158.
>          Sale # 1:    4,025,863.
>          Sale # 2:    7,240,909.
>          Sale # 3:    3,181,818.
>
> LIABILITIES
>
> 1.  Notes Payable-Real Estate:   $1,050,000.
>
>
>
>
>
>
>
>
>
>

**Browne, Vere**

| | |
|---|---|
| **From:** | Seidman, Steven |
| **Sent:** | Monday, April 14, 2003 3:07 PM |
| **To:** | Browne, Vere |
| **Subject:** | FW: Letter |



Summers
Statement.doc

-----Original Message-----
From: Dan Summers [mailto:dansummers@1st.net]
Sent: Monday, April 14, 2003 2:12 PM
To: James McLaren
Cc: Seidman, Steven
Subject: Fw: Letter


James, as promised.

They have short memories or pretend to.


----- Original Message -----
From: "Dan Summers" <dansummers@1st.net>
To: "Bud Bergren" <bud.bergren@elder-beerman.com>
Sent: Friday, September 13, 2002 10:56 AM
Subject: Fw: Letter


>
> ----- Original Message -----
> From: "Patrick Jensen" <PJensen@DUFFLLC.COM>
> To: "Allen Morton (E-mail)" <allen.morton@rbccm.com>
> Cc: "Daniel S. Summers (E-mail)" <dansummers@1st.net>; "Steve Burt"
> <SBURT@DUFFLLC.COM>; "Ron Yokubison" <RYOKUBISON@DUFFLLC.COM>
> Sent: Monday, August 26, 2002 3:34 PM
> Subject: Letter
>
>
> > Allen-
> > Attached please find a letter that summarizes our client's estimated net
> > worth.  Please feel free to contact us with any questions.
> > Regards,
> > Patrick
> >
> > <<Summers Statement.doc>>
> >
> > ----------------------------------------------------------

1

EXHIBIT

C

```
> > Patrick J. Jensen
> > Duff & Phelps, LLC
> > 311 South Wacker Drive, Suite 4200
> > Chicago, Illinois 60606
> > Work: 312-697-4665
> > Cell: 773-307-2669
> > Fax: 312-697-0114
> > ---------------------------------------------------------------
> >
> >
> >
>
```

# DUFF & PHELPS, LLC



April 14, 2003

**PERSONAL & CONFIDENTIAL**

Mr. Allen Morton
Managing Director
RBC Capital Markets
2 Embarcadero Center
Suite 1200
San Francisco, CA 94111

Dear Mr. Morton:

Per your request regarding Daniel S. Summers' net worth, as of August 26, 2002, Mr. Summers' estimated net worth includes the following:

| | |
|---|---|
| Liquid assets: | $63,500,000.00 |
| Real estate assets (net of debts): | $52,500,470.00 |
| Other assets: | $22,773,748.00 |
| Total | $138,774,218.00 |

If you require confirmation directly from Mr. Summers or any additional information, please free to contact either Steve Burt at (312) 697-4620, Ronald Yokubison at (312) 697-4656 or Patrick Jensen at (312) 697-4665.

Sincerely,

Stephen M. Burt
Managing Director

Ronald A. Yokubison
Vice President

Patrick J. Jensen
Associate



**EXHIBIT**

D



**Bricker & Eckler**
ATTORNEYS AT LAW
**COLUMBUS • CLEVELAND**

**BRICKER & ECKLER LLP**
100 South Third Street
Columbus, Ohio 43215-4291
MAIN: 614.227.2300
FAX: 614.227.2390

www.bricker.com
info@bricker.com

**Justin W. Ristau**
614.227.4857
jristau@bricker.com

**EXHIBIT**

2

February 16, 2005

**VIA HAND DELIVERY**

Gary Paul Price
55 City Park Ave.
Columbus, Ohio 43215

      **Re:**    **<u>In re: Daniel S. & Jeannette E. Summers</u>, United States
Bankruptcy Court, Southern District of Ohio,
Case No. 04-50492, Adv. Pro. No. 04-02244**

Dear Mr. Price:

      Enclosed please find Plaintiff Willkie Farr & Gallagher LLP's First
Set of Interrogatories, Request for Production of Documents, and Request for
Admissions, in regard to the above-referenced matter.

      Sincerely,

*Justin W. Ristau* Esq

Justin W. Ristau

JWR/ers
Enclosure

1075440v1



**Bricker & Eckler**
ATTORNEYS AT LAW
**COLUMBUS • CLEVELAND**

**BRICKER & ECKLER LLP**
100 South Third Street
Columbus, Ohio 43215-4291
MAIN: 614.227.2300
FAX: 614.227.2390

www.bricker.com
info@bricker.com

Justin W. Ristau
614.227.4857
jristau@bricker.com

**EXHIBIT**

tabbies

3

February 16, 2005

**VIA REGULAR MAIL**

Daniel S. Summers
415 North Ocean Grande Dr.
Unit 301
Ponte Verde Beach, Florida 32082

>   **Re:**    **In re: Daniel S. & Jeannette E. Summers,** United States
>   **Bankruptcy Court, Southern District of Ohio,**
>   **Case No. 04-50492, Adv. Pro. No. 04-02244**

Dear Mr. Summers:

Enclosed please find Plaintiff Willkie Farr & Gallagher LLP's First Set of Interrogatories, Request for Production of Documents, and Request for Admissions, in regard to the above-referenced matter.

Sincerely,

Justin W. Ristau

JWR/ers
Enclosure

1075440v1

## Ristau, Justin

| | |
|---|---|
| **From:** | Emily Schlenker [emily.schlenker@pricelawohio.com] |
| **Sent:** | Friday, March 18, 2005 1:09 PM |
| **To:** | Ristau, Justin |
| **Cc:** | Gary.Price@pricelawohio.com |

**Subject:** Dan Summers

Dear Attorney Ristau:

As you are aware, our office has filed a Motion to Withdraw as Counsel in this matter. The Court denied this Motion due to an address discrepancy for Mr. Summers. We prepared and filed an Amended Motion to Withdraw pursuant to Local Rules and the memorandum of the Court. By now I hope that you have received the same.

Until we receive a ruling on our Motion, we have continued to forward to the client all documents, pleadings, discovery requests, etc. We are aware that discovery was due to your office March 16, 2005. To date we have received no word from the client or the requested discovery documents. Please advise if you have received any of the same. Until we hear from the Court regarding the Motion we will continue our efforts to contact the client and make sure all correspondence, pleadings, etc are forwarded.

As before, we would like to continue to work with you to resolve this matter.

Respectfully,

Emily K. Schlenker
Paralegal
Price Law Firm, LLC
555 City Park Avenue
Columbus, Ohio 43215
Telephone (614)224-2319
Fax (614) 224-4708

```
                                    ┌─────────────────┐
                                    │   EXHIBIT       │
                                    │                 │
                                    │       5         │
                                    │   _____   │
                                    └─────────────────┘
```

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 04-50492 |
| | : | |
| Daniel S. Summers | : | Chapter 7 |
| Jeannette E. Summers | : | |
| | : | Judge Hoffman |
| Debtor. | : | |

| | | |
|---|---|---|
| WILLKIE FARR & GALLAGHER LLP | : | |
| | | Adv. Pro. Number 04-02244 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL S. SUMMERS | : | |

## PLAINTIFF WILLKIE FARR & GALLAGHER LLP'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS, AND REQUEST FOR ADMISSIONS

Pursuant to Bankruptcy Rules 7033, 7034, and 7036, Plaintiff Willkie Farr & Gallagher ("Plaintiff") hereby propounds to Defendant Daniel S. Summers, the following (1) interrogatories to be answered in writing, under oath, (2) request for production of documents, and (3) request for admissions. Responses to each must be served on counsel for Plaintiff within 30 days after service hereof. Documents responsive to the following requests shall be produced to the offices of Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215.

## DEFINITIONS AND INSTRUCTIONS

A.     The following terms shall have the meanings indicated below:

(1)     The terms "Defendant," "Summers," "you," and "your" shall mean Defendant Daniel S. Summers and his present and former agents, assigns, partners, successors, predecessors, associates, personnel, attorneys, and other persons or entities acting or purporting to act on of his behalf.

(2) The terms "Plaintiff" and "Willkie" shall mean Plaintiff Willkie Farr & Gallagher and its present and former agents, assigns, employees, partners, directors, officers, subsidiaries, affiliates, successors, predecessors, associates, personnel, attorneys, and other persons or entities acting or purporting to act on of its behalf.

(3) The term "person" shall mean and include natural persons, governmental entities, proprietorships, corporations, partnerships, joint ventures, and each other form of organization, entity, or association.

(4) The term "identify" shall mean, with respect to any natural person, to state his or her full name, present or last known residential address, present or last known business address, and telephone number(s).

(5) The term "identify" shall mean, with respect to any business organization, corporation or other legal entity, to state its full name, present or last known address, principal place of business, and telephone number.

(6) The term "identify" shall mean, with respect to any communication, to identify the person making or originating the communication, to identify all persons to whom or in whose presence the communication was made, to state when and where the communication was made, to state the substance of the communication, and to identify all documents which embody, relate or refer to the communication.

(7) The term "identify" shall mean, with respect to any document, to state the date of the document and the type of the document (e.g., letter, memorandum, telegram, chart, photograph, sound reproduction, etc.), to identify the person(s) who prepared the document, to identify any person(s) who signed the document, to identify any person(s) to whom the document was sent, to identify the present location and custodian of the document, and to describe the contents of the document.

(8) The term "document" is used in the broadest possible sense and shall mean, without limitation, any kind of written, printed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, copies and drafts and both sides of originals, copies and drafts, and including but not limited to papers, books, letters, correspondence, telegrams, cables, telex messages, electronic messages or electronic mail (whether or not stored or recorded on-line or off-line in archive storage), financial statements, memoranda, notes, notations, work papers, transcripts, minutes, reports and recordings of telephone conversations or other conversations, or of interviews, or of conferences or other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals,

statistical records, desk calendars, appointment books, diaries, expense account records, lists, tabulations, summaries, sound recordings, videotapes, word processing disks and/or memory or archive systems, computer disks and/or memory or archive systems, computer printouts, data processing input and output, magnetic tapes, magnetic disks, microfilms, all other records kept by electronic, magnetic, photographic, optical or mechanical means, and things similar to any of the foregoing, however denominated.

(9)     The term "communication" shall mean the transmission of any verbal or nonverbal, written or non-written message, information, sign, symbol, or behavior, and shall include the process by which such transmission occurs.

(10)    The words "documents relating to" shall mean documents containing, constituting, showing, evidencing, concerning, pertaining to, relating to, or referring to, whether directly or indirectly.

(11)    The term "Duff & Phelps Letter" shall mean the letter from Duff & Phelps, LLC to Mr. Allen Morton attached to Plaintiff's Complaint herein as Exhibit D.

B.     All interrogatories should be answered based on the knowledge of Defendant and/or any of Defendant's attorneys, agents, and representatives.

C.     Where an interrogatory calls for the answer in more than one part, each part shall be separately answered so as to be fully understandable. If you object to any part of an interrogatory, answer all parts of such interrogatory as to which you do not object, and as to each part to which you do object, set forth the basis for the objection.

D.     The singular number and masculine gender shall include, and be applied as, the plural or the feminine gender or neuter, and vice-versa, as the circumstances of the particular interrogatory may make appropriate.

E.     These interrogatories are continuing so as to require further and supplemental responses if Defendant receives or discovers additional information between the time of original response and the time of trial.

F.     If you deem any request for documents to call for the production of privileged or otherwise nondisclosable materials and you assert such claim, furnish a list at the time of production identifying each document so withheld together with the following information:

(1)     the reason for withholding each such document or material, stated with sufficient particularity so as to permit the Court to adjudicate the validity of the claimed privilege;

(2)      a statement of the facts constituting the basis for any claim of privilege or other ground of non-disclosure; and

(3)      a brief description of each such document or other material, including:

         (a)      the date of the document;

         (b)      the name of its author(s) or preparer(s) and an identification by employment and title of each such person(s);

         (c)      the name of each person to whom the document or other material was sent or who has had access to, or custody of, the document or other material, together with an identification of each such person(s);

         (d)      the paragraph of this request to which the document or other material is responsive; and

         (e)      in the case of any document or other material that relates in any way to a meeting or conversation, identification of such meeting or conversation and the persons attending or participating in such meeting or conversation.

G.      With respect to each request, Plaintiff requests that Defendant identify and produce all documents that are known to Defendant or that he can locate or discover that are in their possession, custody or control, from whatever source derived, which, directly or indirectly, relate, refer or pertain to the subject matter of the request made, including, without limitation, all such documents in the files (whether they be denominated personal, business or any other files) in the possession, custody or control of Defendant or, as applicable, of Defendant's agents, representatives or other persons acting on his behalf or under his control.

H.      Plaintiff requests that Defendant produce all responsive documents and other materials in an orderly manner (and with appropriate markings or other identification) so that Plaintiff will be able to identify the source of the document or other material, the file in which the document or other material was maintained, the person to whom such file belongs, and the specific request to which the document or other material is responsive.

I.      These requests shall be deemed to be continuing so as to require further and supplemental production if Defendant receives or discovers additional documents or other material between the time of original production and the time of trial.

## INTERROGATORIES

### INTERROGATORY #1

Please identify any and all persons who participated or assisted in any manner with the preparation of responses to these interrogatories, requests for production, and requests for admission and indicate which responses, interrogatories, requests for production of documents and requests for admissions each person identified participated or assisted to prepare a response.

#### ANSWER:

### INTERROGATORY #2

Please identify each and every person whom you intend to call as a lay witness at trial and as to each state the subject matter upon which said witness is expected to testify.

#### ANSWER:

### INTERROGATORY #3

Please identify each and every person whom you intend to call as an expert witness at trial and as to each such person:

    (a)    state the subject matter upon which such person is expected to testify;

(b)      state the substance of the facts and opinions to which such person is expected to testify;

(c)      set forth a summary of the grounds for each opinion;

(d)      describe in detail the education, experience, or other background upon which you will rely in qualifying such person as an expert; and

(e)      identify each document reflecting such education, experience, or other background including, but not limited to, all resumes, curricula vitae, and lists of publications.

**ANSWER:**

## INTERROGATORY #4

Please identify each of your assets categorized as "Liquid assets" in the Duff & Phelps Letter and provide the value of each of these assets as of August 26, 2002.

**ANSWER:**

## INTERROGATORY #5

Please identify each of your assets categorized as "Real estate assets (net of debts)" in the Duff & Phelps Letter and provide the value of each of these assets as of August 26, 2002.

### ANSWER:

## INTERROGATORY #6

Please identify each of your assets categorized as "Other assets" in the Duff & Phelps Letter and provide the value of these assets as of August 26, 2002.

### ANSWER:

## INTERROGATORY #7

Please provide the value of your total net worth as of August 26, 2002.

### ANSWER:

## INTERROGATORY #8

Please describe your interest in the Summers Family Limited Partnership, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #9

Please provide the value of all assets held by the Summers Family Limited Partnership, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #10

Please provide the value of all assets held by the Daniel S. Summers Trust, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #11

Please provide the value of all assets held by the Jeanette E. Summers Trust, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #12

Please provide the value of all assets held by the Matthew A. Summers Trust, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #13

Please provide the value of all assets held by the Katherine A. Summers Trust, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #14

Please provide the value of all assets held by the Summers Family Foundation, as of April 11, 2003.

### ANSWER:

## INTERROGATORY #15

Please state whether the Duff & Phelps Letter accurately reflected your estimated net worth as of August 26, 2002.

### ANSWER:

## INTERROGATORY #16

If the Duff & Phelps Letter did not accurately reflect your estimated net worth as of August 26, 2002, please state the nature of each inacurracy.

### ANSWER:

## REQUEST FOR PRODUCTION OF DOCUMENTS

1. Please produce any and all documents that were in any way used, identified, relied upon, referred to, or reviewed by you in the preparation of your responses to interrogatories or requests for admission propounded by Plaintiff.

    ### ANSWER:

2. Please produce any and all documents relating to any written or oral communications or meetings between Plaintiff and the Defendant that in any way relate to or refer to the subject matter of this lawsuit.

    ### ANSWER:

3. Please produce any and all documents that relate to any correspondence between you and Steve Burt, Ron Yokubison, Patrick Jensen, or any person affiliated with Duff & Phelps, LLC from April 1, 2000 through the present.

   **ANSWER:**

4. Please produce any and all documents relating to any written or oral communications or meetings between the Defendant and any third party that in any way relate to or refer to the subject matter of this lawsuit.

   **ANSWER:**

5. Please produce any and all statements, canceled checks, check books, pass books, or other records or documents for any bank, financial or brokerage account, whether jointly or individually held, utilized by the you from April 1, 2001 through the present, including any bank account closed during that time. This request includes any accounts in which you have any interest, including an interest as a signatory on a account, and any and all records that reflect or indicate the present or past balances and account numbers for each such account.

   **ANSWER:**

6. Produce all state and federal tax returns for the Debtor, or entities related to or controlled by the Debtor for the years 2000 through 2003.

   **ANSWER:**

7. Please produce all documents representing, referring, evidencing or relating in any way to any interest that you may hold in any stocks, bonds, or other securities.

   **ANSWER:**

8. Please produce any and all documents that you believe are relevant to the subject matter of this lawsuit.

   **ANSWER:**

## REQUEST FOR ADMISSIONS

## REQUEST FOR ADMISSION #1

Admit that you delivered a written statement to Plaintiff containing representations related to your financial condition.

   **ANSWER:**

## REQUEST FOR ADMISSION #2

Admit that the written statement delivered to Plaintiff contained materially false representations related to your financial condition.

   **ANSWER:**

## REQUEST FOR ADMISSION #3

Admit that Plaintiff reasonably relied upon the written statements related to your financial condition in providing additional legal services to you.

**ANSWER:**

## REQUEST FOR ADMISSION #4

Admit that you provided the written statements related to your financial condition with the intent to deceive Plaintiff.

**ANSWER:**

Respectfully Submitted,

Kenneth C. Johnson   (0022021)
Justin W. Ristau     (0075222)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio  43215-4291
(614) 227-2300
Counsel for Plaintiff Willkie Farr &
Gallagher LLP

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the foregoing was served upon

the following by the method indicated, this 16 day of February 2005:

Gary Paul Price, Esq.  (Hand Delivery)
55 City Park Ave.
Columbus, Ohio  43215

Daniel S. Summers     (Regular Mail)
415 North Ocean Grande Dr.
Unit 301
Ponte Verde Beach, Florida  32082

Justin W. Ristau

## <u>VERIFICATION</u>

STATE OF _____ )
                                ) ss:
COUNTY OF _____ )

     I, _____(print), having been first duly cautioned and sworn, deposes and states that the answers to the foregoing interrogatories are true and accurate to the best of my knowledge and belief.

<br>

                                       _____
                                       Signature

<br>

     Sworn to before me and subscribed in my presence this _____ day of_____ 2004.

                                       _____
                                       Notary Public